

2800 Gap Road
Batesville, Arkansas 72501

*Via National Courier and Email*

December 10, 2019

Procter & Gamble Manufacturing Company
Spring Grove Avenue
Cincinnati, OH 45217
Attn: James Hodges
Email: hodges.jm@pg.com

    Re:    NOBS Purchase Agreement

Dear Jim:

I write in response to our conference call of November 21, 2019 as well as your email of November 22, 2019, both of which concerned the winding-up of the Purchase Agreement dated May 18, 2018 (**"Agreement"**) between various Procter & Gamble entities (**"P&G"**) and FutureFuel Chemical Company (**"FutureFuel"**). This Agreement provided for the continued sale of NOBS by FutureFuel to P&G for a period of up to two years.

As explained during our call, the NOBS production process is multi-step, large-scale, and continuous. As a result, there are significant quantities of materials throughout the process in different stages and as such there will always be remaining materials in the equipment upon cessation of production. This has been known by the parties since inception of the project. Indeed, the entire purpose underlying inclusion of Section 7.3 (Final Accounting) of the Agreement was to account for these remaining materials upon termination of the Agreement.

P&G's effort to differentiate between "expiration" and "termination" appears to be little more than an attempt employ semantics to avoid its obligations under Section 7.3 to both pay for and dispose of the production materials remaining at the end of the Agreement. The concept of a "final accounting" is hardly novel. On the contrary, some sort of final account, invoice or other statement would be expected upon conclusion of an ongoing production contract, particularly one which extends over a period of years.

In this instance, Section 7.3 identifies specific obligations for both P&G and FutureFuel with respect to the final accounting at the conclusion of their relationship. Additionally, the very first sentence of Section 7.3 unequivocally imposes these obligations "[u]pon termination of this AGREEMENT for any reason . . ."

**However, to dispel any doubt concerning the applicability of Section 7.3 to the current situation, this letter hereby constitutes the 365 calendar day written notice, in accordance with Section 4.3 of the Agreement, that FutureFuel will be discontinuing all activities relating to production of NOBS. Pursuant to Section 4.3, the Agreement will be terminated at the end of this 365 day period, unless the parties are able to negotiate a mutually acceptable alternative.**

**EXHIBIT E**

We are requesting that P&G provide information regarding its preferences for final disposition of the materials identified in Section 7.3 of the Agreement. As I have previously explained, there may be options where some of the remaining materials could be sold back to the supplier (likely at a reduced price), which could provide P&G with some savings upon final disposition. However, the longer a decision by P&G is delayed, the less likely return options will be available.

Sincerely,

Paul Flynn
Executive Vice President of Business and Marketing
FutureFuel Chemical Company


CC: Juliet Grain, Scott Miller.